# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

| | |
|---|---|
| KENNETH M. LUNDQUIST, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CV414-156 |
| ) | |
| EFFINGMAM COUNTY, JIMMIE ) | |
| McDUFFIE, RICHARD BUSH, and ) | |
| BRIAN BARRS, ) | |
| ) | |
| Defendants. ) | |

## REPORT AND RECOMMENDATION

Inmate-plaintiff Kenneth M. Lundquist, who is proceeding *in forma pauperis* ("IFP"), has filed a 42 U.S.C. § 1983 complaint contending that he was forced to clean rooms without protective gloves, was not told what chemicals he would be using, and slipped and fell while cleaning, injuring himself. (Doc. 1.)

The Court must now screen his complaint to determine whether he has stated a cognizable claim for relief. 28 U.S.C. § 1915(e)(2)(B)(ii) (requiring a district court to dismiss *sua sponte* an IFP complaint that

fails to state a claim for relief, is frivolous or malicious, or seeks monetary relief from a defendant immune from such relief); *see also* 28 U.S.C. § 1915A (courts must identify "cognizable claims" filed by prisoners or other detainees and dismiss claims that are frivolous, malicious, fail to state a claim for relief, or seek monetary relief from a defendant immune from such relief); 42 U.S.C. § 1997e(c)(2) (allowing dismissal on the same four standards provided by § 1915A as to any prisoner suit brought "with respect to prison conditions").

Lundquist states in raw, unedited form:

> On Sept. 4, 2013 I was brought into custody of the Effingham Co. Jail. I was processed into facility and housed in Unit "b" Cell 4.
>
> Upon entrance to the cell, it was noted, all walls had definite organic matter covering several areas. The air intake & exhaust vents had a brown "ooze" coming from them, and trailing down the walls.
>
> Once in my cell, it was noted some of the same things existed in the individual cell. The sinks did not work and it was discovered some of the material on the wall was fecal matter.
>
> Several inmates asked & were rebuked for simply wanting some kind of protective gear to clean up mess.
>
> We are only dressed in orange top & bottom with an orange sweatshirt. No underware no socks, and open "Flip Flops." We were issued chemicals to clean with, and when asked what they

were, we were told one bleach the other they did not know. It was mandated that everyone must clean up using the unknown chemicals without any protection whatsoever in a hostile and dangerous environment.

In Sept of 2013 I asked the duty corporal for MSDS (material safety data sheets) on the chemicals used. He stated that those OSHA required information sheets were not available. At that time, I asked Lt. Barrs if I could have some boots and nitrile gloves so that I may clean the comunal toilet and shower. Both items were denied and I was forced to put my health and safety in jeopardy by cleaning those areas without any protection in bare feet.

After filing a grievance to this effect (unanswered) I was told by Off. Peavy that it was upon the order of Captain Brown. On Oct. 17, 2013 I had a serious fall performing these duties, requiring hospitalization for several days. I am also suffering from long term effects of fall (head injury).

To date, even in new facility opened 3/28/2014, jail still refuses any protective items, any safety items, requires us to clean toilets w/ bare hands. Also, we must clean our eating tables w/ same rags we have to use to clean toilets.

(Doc. 1 at 3-4.) Lundquist asks the Court to force the county to provide safety equipment and to order an investigation into the practices at the jail. (*Id.* at 4.)

Prison officials violate the Eighth Amendment proscription against cruel and unusual punishment by exposing prisoners to inhumane

3

conditions of confinement.[1] To establish that he has been treated inhumanely, a prisoner must meet both the objective and subjective elements of an Eighth Amendment claim. First, he must allege a prison condition that, objectively, is so extreme as to pose "a substantial risk of serious harm to his health or safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Second, he must demonstrate that the responsible prison official had the subjective mindset of "deliberate indifference" to that excessive risk. *Id.*; *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004). Lundquist's complaint falls considerably short of establishing the necessary elements of an Eighth Amendment claim.

As to his allegation regarding the cleaning supplies, Lundquist never asserts that he was forced to use chemicals any more toxic or hazardous than common household disinfectants used in millions of

---

[1] It is unclear whether Lundquist was serving a sentence of imprisonment or was held in pretrial detention at the time the events alleged in his complaint. Although the Eighth Amendment's proscription of "cruel and unusual punishments" applies only to convicted prisoners and not to pretrial detainees (who may not be subjected to any form of punishment), the Fourteenth Amendment Due Process Clause entitles detainees to the same level of protection and humane treatment as convicted prisoners. *Hamm v. DeKalb County*, 774 F.2d 1567, 1573-74 (11th Cir. 1985) ("states may not impose on pretrial detainees conditions that would violate a convicted prisoner's eighth amendment rights."). Regardless of his custodial status, therefore, the Court will apply Eighth Amendment jurisprudence in evaluating his claims.

American homes on a regular basis. Many, if not most, ordinary citizens do not wear gloves or masks while cleaning with such products. Although Lundquist contends that he "was forced to put [his] health and safety in jeopardy," *id.* at 3, he never asserts that he suffered any injury whatsoever as a result of using the cleaning products without protective gear. Lundquist has not alleged facts establishing that, objectively, he was incarcerated under conditions posing "a *substantial* risk of serious harm to his health or safety." *Farmer*, 511 U.S. at 834.

Furthermore, even assuming Lundquist has met the objective element of an Eighth Amendment claim, his complaint fails to allege that any prison official was consciously aware that requiring him to use the cleaning products without gloves or other protective gear exposed him to a substantial risk of serious harm. Under the Eighth Amendment, a prison official cannot be held liable for his "failure to alleviate a significant risk that he should have perceived but did not." *Id.* at 838. Because "only inflictions of punishment" are prohibited by the Eighth Amendment, *id.* at 841, a prison official faces liability under § 1983 only where he has the requisite mental state of "deliberate indifference," which the Supreme

5

Court has defined in terms of the subjective recklessness standard used in the criminal law: the official must be actually aware of the risk to which the inmate is exposed and he must consciously disregard that risk. *Id.* at 837-40. Lundquist never alleges that any prison official was consciously aware that requiring prisoners or detainees to use cleaning products without gloves or other protective measures exposed them to a significant risk of serious harm.

Conceivably, Lundquist has stated the elements of a common law cause of action for negligence, i.e., that defendants failed to protect him from a recognizable risk of harm that they should have appreciated, even if they did not. Eighth Amendment, liability, however, requires conduct by a prison official that is "more blameworthy than negligence." *Farmer*, 511 U.S. at 835; *Daniels v. Williams*, 474 U.S. 327, 328 (1986) (a prison official's negligence in failing to protect an inmate from harm does not give rise to a cause of action § 1983). Negligence law imposes no state-of-mind requirement and focuses exclusively on the defendant's *conduct*; if that conduct does not measure up to what a reasonable man of ordinary prudence would have done under like circumstances, then

recovery is permitted for failure to guard against a recognizable risk of harm that the defendant should have appreciated, whether he did so or not. William L. Prosser, Law of Torts §§ 30-31 (4th ed. 1971). A prison official, however, does not face liability under § 1983 simply because he was "aware of facts from which the inference *could be drawn* that a substantial risk of serious harm exist[ed];" rather, he must subjectively "draw the inference." *Farmer*, 511 U.S. at 837 (emphasis added). Lundquist's complaint fails to allege such a mental state on the part of any defendant.

For the same reason, Lundquist's assertion that he was injured when he slipped and fell while using cleaning products at the jail fails to state a constitutional tort compensable under § 1983. Lundquist simply alleges that he injured himself when he fell. He fails to allege facts suggesting that his injury resulted from some negligent act or omission on the part of any prison official, much less that any official was callously indifferent to a known and substantial risk that he was likely to slip and fall. Slip and falls are a regular occurrence for our bipedal species, and prison officials are not guarantors that prisoners will be free from such

mishaps while under their care. Lundquist has not alleged that any injury he suffered was the result of some callous disregard for his safety on the part of any prison official. His complaint, therefore, should be dismissed.

**SO REPORTED AND RECOMMENDED** this 20th day of November, 2014.

UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA